*21 OPINION AND ORDER
Petitioner Michael Scott Stilson has filed a petition for post-conviction relief alleging that convictions he received in the Fourth and Eighth Judicial District Courts violated his rights to not be twice put in jeopardy guaranteed by the Fourteenth and Fifth Amendments to the United States Constitution, and Article II, Section 25, of the Montana Constitution.
On March 26, 1991, the State filed an Information in the First Judicial District Court charging Stilson with the crime of issuing a bad check, a felony, common scheme, for numerous bad checks written in Lewis and Clark County. On the same day Stilson pled guilty to the charge, and on March 27, 1991, the District Court sentenced Stilson to a three-year deferred imposition of sentence.
On January 29,1991, the State filed an Information in the Fourth Judicial District Court charging Stilson with issuing more than three bad checks in Missoula County, a felony, common scheme. On April 1, 1991, Stilson pled guilty to the charge, and on May 20, 1991, the District Court sentenced Stilson to a suspended sentence of six years confinement to run consecutive to the sentence imposed by the First Judicial District Court.
On May 28, 1991, the State filed an Information in the Eighth Judicial District Court charging Stilson with issuing a bad check, a *22 felony, common scheme. While the Cascade County Information specifically referenced only a single bad check written in Cascade County, it listed as witnesses individuals from six separate Great Falls businesses. On June 14, 1991, Stilson pled guilty to the charge and on the same day the District Court sentenced him to ten years confinement to run consecutive to the sentences imposed in the First and Fourth Judicial District Courts. Execution of the sentence was suspended. The judgment indicated that Stilson wrote 20-25 checks in the Great Falls area and that the total checks written in Cascade County totaled $2,961.
Stilson also wrote bad checks in Yellowstone and Butte-Silver Bow Counties. Stilson was not prosecuted in either of those counties but the judgment entered by the Fourth Judicial District Court ordered Stilson to pay restitution for those bad checks.
On February 15,1996, Stilson filed this petition for post-conviction relief alleging his convictions in the First, Fourth, and Eighth Judicial District Courts were for the same common scheme and, therefore, that the Fourth and Eighth Judicial District Court convictions violated his double jeopardy rights.
The State argues that Stilson’s double jeopardy claims are waived because he failed to raise them prior to entering his guilty pleas. Stilson argues that he did not waive his double jeopardy claims when he pled guilty because his claims are jurisdictional.
It is well established that a plea of guilty which is voluntary and understandingly made constitutes a waiver of nonjurisdictional defects and defenses, including claims of constitutional violations which occurred prior to the plea. Hagan v. State (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387 (citing State v. Turcotte (1974), 164 Mont. 426, 428, 524 P.2d 787, 788). In Hagan we held that the jurisdictional grounds exception applies to “those cases in which the district court could determine that the government lacked the power to bring the indictment at the time of accepting the guilty plea from the face of the indictment or from the record.” Hagan, 873 P.2d at 1388 (quoting United States v. Cortez (9th Cir. 1992), 973 F.2d 764, 767).
When Stilson pled guilty and was sentenced in Cascade County the District Court had before it a copy of the pre-sentence investigation report prepared with regard to Stilson’s previous sentencing in Missoula County. The report also referenced Stilson’s conviction in Lewis and Clark County.
Thus, we conclude that at the time the Eighth Judicial District Court accepted Stilson’s guilty plea the record before it contained his *23 two prior convictions and was sufficient for the court to determine whether the government lacked the power to bring the charges at issue due to the constitutional prohibitions against placing a person twice in jeopardy. We conclude that Stilson has not waived his double jeopardy claim and therefore proceed to address the merits of his claim.
Stilson claims that he engaged in one common scheme to write bad checks in five different counties and the only thing that separates his crime into parts is geography. He argues that “common scheme” is an element of the crimes charged and that nothing in the charges evidences a different continuing criminal design. Stilson maintains that since he was convicted and punished for the common scheme in Lewis and Clark County, he cannot be prosecuted or punished again.
The State argues that double jeopardy protections prohibit multiple punishments for the same offense, and that in this case the Legislature intended “issuing a bad check” to be the offense, not “common scheme.” The State asserts that “common scheme” is not an element of the offense but rather a sentence enhancement provision which determines if the offense is a misdemeanor or felony. The State maintains that the offense in each county did not require proof of acts committed in the other counties and therefore they were separate and distinct offenses. According to the State, convicting a defendant of one common scheme does not foreclose convictions of additional common schemes in different counties.
In State v. Crowder (1991), 248 Mont. 169, 810 P.2d 299, we stated that in examining questions of double jeopardy, this Court has consistently applied the test set forth in Blockburger v. United States (1932), 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306. Crowder, 810 P.2d at 304. We noted that Blockburger dealt with two different double jeopardy issues — one was whether the defendant could be convicted of violating two different statutory provisions arising from a single sale of dangerous drugs, and the second was whether the defendant could be convicted of two counts of selling a dangerous drug under a single provision of the Narcotics Act. Crowder, 810 P.2d at 304-05.
When two distinct statutory provisions are involved, the test to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. Crowder, 810 P.2d at 304 (citing Blockburger, 284 U.S. at 304, 52 S.Ct. at 182). The U.S. Supreme Court explained this “elements test” by stating that:
A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does *24 not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.
Blockburger, 284 U.S. at 304, 52 S.Ct. at 182.
This Court has employed the “elements test” to determine whether a defendant can be charged and convicted of violating two statutes for the same act or transaction. See State v. Wolfe (1991), 250 Mont. 400, 821 P.2d 339 (holding that a defendant can be convicted of both possession of explosives and criminal mischief); State v. Clawson (1989), 239 Mont. 413, 781 P.2d 267 (holding that a defendant can be convicted of both sexual intercourse without consent and aggravated kidnapping); State v. Long (1986), 223 Mont. 502, 726 P.2d 1364 (holding that a defendant can be convicted of both misdemeanor assault and sexual assault).
In Crowder, however, we dealt with a situation similar to the second Blockburger issue. Crowder was charged with two violations of the same statutory provision (possession of dangerous drugs) and we were faced with the question of whether Crowder’s possession of drugs on his person and possession of drugs on his property constituted two separate acts of possession. Crowder asserted that principles of fundamental fairness required that he be charged only once for conduct which amounted to the same transaction. Crowder, 810 P.2d at 304.
We again looked to the Blockburger Court which addressed the issue as follows:
Each of several successive sales constitutes a distinct offense, however, closely they may follow each other.... [W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.
Blockburger, 284 U.S. at 302, 52 S.Ct. at 181 (citation omitted). In affirming the convictions, the U.S. Supreme Court examined the legislative intent behind the Narcotics Act and concluded that the statute did not punish engaging in the business of selling dangerous drugs, but rather penalized any sale. Blockburger, 284 U.S. at 302, 52 S.Ct. at 181.
We adopted a similar analysis in Crowder and articulated a second test when only one statutory provision is involved. To determine the “allowable unit of prosecution” courts look to legislative intent since discretion is with the legislature to impose punishments, subject only to constitutional limitations. Crowder, 810 P.2d at 305 (citing Bell v. *25 United States (1955), 349 U.S. 81, 82, 75 S. Ct. 620, 622, 99 L. Ed. 905, 910). In Crowder we held that the Legislature intended to punish each separate possession of dangerous drugs and concluded that the district court did not err in failing to join the separate counts of possession on the person and possession on the premises. Crowder, 810 P.2d at 305-06.
The facts of the present case align themselves with Crowder in that Stilson was charged under the same statute, § 45-6-316, MCA (1989), and was convicted in all three different counties of issuing a bad check, a felony, common scheme. Thus, the question is whether the Legislature intended that a defendant could be punished for more than one common scheme.
We acknowledge the fact that in State v. Fleming (1987), 225 Mont. 48, 730 P.2d 1178, we stated that “[c]ommon scheme is clearly an element to be charged and proven under § 45-6-316, MCA, as it is specifically mentioned in subsection (3) of the statute.” Fleming, 730 P.2d at 1180. Therefore, we do not agree with the State’s contention that “common scheme” is merely a sentence enhancement provision which determines if the crime is a misdemeanor or felony. Nevertheless, the focus of our analysis still remains whether or not a defendant may be charged with more than one common scheme.
Stilson’s reliance on Fleming and State v. McHugh (1985), 215 Mont. 296, 697 P.2d 466, is misplaced. In both of those cases the defendants were charged in only one county with one count of issuing bad checks as part of a common scheme and the defendants disputed that their conduct constituted a common scheme. We held that the acts of issuing multiple bad checks are a common scheme if the acts were “either individually incomplete such that they show that a single crime had been committed, or [were] acts which closely follow [ed] one another evidencing a continuing criminal design.” Fleming, 730 P.2d at 1180. Even though we upheld the convictions and concluded that the defendants’ conduct constituted a common scheme, we did not address nor foreclose the possibility that a defendant could, under the appropriate facts and circumstances, be convicted of more than one common scheme.
Stilson argues that the Legislature did not intend to allow the State to divide one common scheme into multiple common schemes and multiple felony violations. According to Stilson, the Legislature did not provide in § 45-6-316, MCA, or anywhere else in the Code, a basis to divide a single common scheme of issuing bad checks into multiple common schemes.
*26 While we agree with Stilson that the Code does not provide for multiple common schemes, we conclude that neither has the legislature foreclosed such a possibility. Under the appropriate facts and circumstances, we conclude that double jeopardy protections do not necessarily prevent a defendant who has been convicted of a common scheme in one county from being convicted of another common scheme in a different county.
In this case Stilson was charged in each county for only those checks written in that particular county and the bad checks written in each county were separate and distinct “common scheme” offenses. Stilson wrote bad checks to a number of different vendors in each county and, when taken together, such a series of acts provides the basis for the charge of felony common scheme in each county. The evidence required for the State to prove the offense in each county was different and specific to each county and the series of acts or transactions in each county were different from those in the other jurisdictions, both individually and as a group.
' Thus, under the specific facts and circumstances of this case, Stilson committed the crime of writing a bad check, a felony, common scheme, in each of the jurisdictions for which he was charged and we hold that the convictions he received in the Fourth and Eighth Judicial District Courts did not violate his double jeopardy rights. Therefore,
IT IS HEREBY ORDERED that Stilson’s petition for post-conviction relief is DENIED.
CHIEF JUSTICE TURNAGE, JUSTICES ERDMANN, NELSON and GRAY concur.